UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHERIAN SMITHY                                                               PLAINTIFF

v.                                                          Civil No. 1:17-cv-00205-GHD-DAS

THE KROGER CO., INC, &
THOMPSON SQUARE, LLC                                                      DEFENDANTS

## MEMORANDUM OPINION

Now before this Court is Defendant Kroger Co., Inc.'s motion for summary judgment [40]. Having considered the matter, the Court finds the motion should be granted.

### Background

On December 30, 2016, Plaintiff Sherian Smithy fell while in the parking lot of Defendant Kroger's store in Tupelo, Mississippi. Compl. at ¶ 5 [2]. Smithy alleges after that putting groceries purchased from Kroger in her car, she went to push her shopping cart away from her vehicle, and that as she did, she tripped and fell. *Id.* ¶ 10. Smithy does not remember the fall itself. Rather, the next thing she could recall was her daughter and another individual standing over her. Sherian Smithy Deposition at 33-34 [26-1]. According to Smithy, this individual stated that Smithy fell because of a hole in the parking lot. *Id.*

Smithy brought this negligence action against Kroger and Defendant Thompson Square, the owner of the parking lot, in state court. After the case was removed to this Court, Thompson Square moved for summary judgment. The Court granted summary judgment, holding that Smithy could not establish that a particular hole caused her fall, and further that hole did not constitute an unreasonably dangerous condition under Mississippi law. *See Smithy v. Kroger Co.*, No. 1:17-cv-00205-GHD-DAS, 2018 WL 3384305 at *2–3 (N.D. Miss. July 11, 2018)

Kroger now moves for summary judgment as well arguing (1) that it cannot be liable for the condition of the premises because it was not in control of the parking lot nor did it have a duty to maintain it under the lease agreement it had with Thompson Square; and (2) that Smithy cannot establish an unreasonably dangerous condition caused her fall.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action'." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s]

factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Analysis

A plaintiff bringing a negligence claim under Mississippi law "must prove by a preponderance of the evidence that the defendant owed her a duty, the defendant breached that duty, a causal connection between the defendant's conduct and her injuries, and damages." *Dorsey v. Simon Prop. Grp., L.P.*, 378 F. App'x 476, 478 (5th Cir. 2010) (citing *Simpson v. Watson*, 14 So. 3d 86, 88 (Miss. Ct. App. 2009)). A business owner's duty depends on the plaintiff's status as an invitee, licensee, or trespasser. *Leffler v. Sharp*, 891 So. 2d 152, 156–57 (Miss. 2004). "Under Mississippi law, a store owner owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions that are not readily apparent." *Kern v. Wal-Mart Stores, Inc.*, 174 F.3d 198, 1999 WL 153013, at *2 (5th Cir. Feb. 25, 1999) (citing *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 175 (Miss. 1995)). However, "[a] business operator is not an insurer against all injuries." *Id.* (citing *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (summarizing Mississippi law)). "[M]erely proving the occurrence of an accident within the business premises is insufficient to prove liability; rather, the plaintiff must demonstrate that the operator of the business was negligent." *Lindsey*, 16 F.3d at 618 (citing *Sears, Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966)). "To prove that the operator was negligent, the plaintiff must show either [1] that the operator caused the dangerous

3

condition, or, [2] if the dangerous condition was caused by a third person unconnected with the store operation, that the operator had either actual or constructive knowledge of the dangerous condition." *Id.* (citing *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992); *Waller v. Dixieland Food Stores, Inc.*, 492 So. 2d 283, 285 (Miss. 1986)).

I. **A jury could find Kroger controlled the parking lot enough to warrant liability.**

Kroger first argues that under its lease with Thompson Square, it does not have any liability for the maintenance of the parking lot. Smithy does not respond to this argument.

The general rule is that a "tenant/lessee/occupier of premises owes a duty of reasonable care to its invitees for the demised property and such necessary incidental areas substantially under its control .... and which he invites the public to use." *Wilson v. Allday*, 487 So. 2d 793, 798 (Miss. 1986). The landlord and tenant may "allocate responsibility for keeping a leased premises in a safe condition through contract." *Titus v. Williams*, 844 So. 2d 459, 466 (Miss. 2003). But even when there is a contractual allocation of responsibility between the lessee and the lessor, the lessee can be held liable, "so long as the lessee exercised some degree of possession and control over the property". *Ray v. Blockbuster, Inc.*, 9 So. 3d 422, 424 (Miss. Ct. App. 2008) (citing *Wilson*, 497 So.2d at 797).

The court in *Galloway v. Food Giant, Queens Blvd Commons, LLC*, faced a similar factual scenario where a plaintiff sued a lessee for an injury that occurred in a parking lot. No. 2:15CV48-LG-RHW, 2016 WL 2599149, (S.D. Miss. May 5, 2016.) The lessee, Food Giant, leased retail space in a development that included a parking lot for the common use of Food Giant and other retail tenants, as well as patrons. *Id.* at *3. The lease provided that the landlord had responsibility for maintenance of the parking lot; while Food Giant was responsible for contributing maintenance costs, it was the landlord's responsibility to actually perform the maintenance. *Id.* No provision

4

required Food Giant to insure the parking lot or to indemnify the landlord for claims that arose out of injuries on the parking lot. *Id.*

The court held that the terms of the lease "clearly place the landlord in control of the parking lot, not the lessee." *Id.* Nonetheless, the court in *Galloway* refused to grant summary judgment because deposition testimony revealed that Food Giant invited its customers to use the parking lot, directed its employees to keep the parking lot clean, and maintained several cart corrals in the parking lot. The *Galloway* Court, relying on the Mississippi Supreme Court's decision in *Wilson* (which contained extremely similar facts) found that this was sufficient to create a jury question as to the extent of control that Food Giant exercised over the parking lot. *Id.* (citing *Wilson*, 487 So. 2d at 798).

The Lease Agreement between Kroger and Thompson Square is, in many ways, similar to the agreement between Food Giant and its landlord. The Lease Agreement devises only the building, and not the parking lot to Kroger. Lease Agreement at 1 [44-3]. It provides that Thompson Square is responsible for maintaining the lot. *Id.* at 1, ¶ 3. It does not require Kroger to obtain insurance covering the parking lot. *Id.* at 6.

The Lease Agreement does, however, contain provisions which suggest a level of control that could warrant premises liability for Kroger. First, the Lease Agreement provides that Thompson Square may not add buildings or alter the parking lot layout without Kroger's prior written consent. *Id.* at 1, ¶ 3. Further, the Lease Agreement provides that in the "event of an emergency threatening injury to persons or property, Kroger may repair the problem itself. *Id.* at 8.

These provisions raise the possibility of control by Kroger. In *Blockbuster*, the Mississippi Court of Appeals held that evidence of a lease provision requiring the lessee to insure and defend

5

claims arising out of incidents on the parking lot, taken with other evidence, created a genuine issue of material fact about the extent of lessee's control of the lot. Here, where the Lease Agreement appears to provide an even greater amount of control to Kroger—granting them the right to prevent any changes to the parking lot and allowing them to make certain repairs if necessary—the Court finds that these provisions are sufficient to create a jury question on the issue of control.

**II. Smithy cannot identify an unreasonably dangerous condition that caused her fall.**

Next, Kroger argues that Smithy cannot offer evidence of an unreasonably dangerous condition that caused her fall. Kroger contends that there is no evidence establishing that Smithy tripped on a particular hole. Smithy, in turn, argues that she has identified a particular hole and that the hole, combined with inadequate lighting in the area creates an unreasonably dangerous condition.

The evidence the parties have put forward in support and opposition to this motion is the same as was presented to the Court in consideration of the Thompson Square's motion for summary judgment. As the Court held there, and holds again today, Smithy has not put forward evidence sufficiently identifying with any particular object that caused her fall. *Smithy*, 2018 WL 3384305 at *2–3 Smithy stated in her deposition that she did not remember exactly why she fell and that she could not identify exactly where she was when she fell. Smithy Dep. at 33, 78–79. Mississippi law requires that a plaintiff specifically identify the allegedly dangerous condition. *See, e.g., Ringo v. Wilson*, 204 So. 3d 827, 829 (Miss. Ct. App. 2016) ("Here, [the plaintiff] failed to state with confidence that she fell due to the crack in the driveway.") The only evidence that Smithy provides pointing to a particular hole is the statement of her daughter, with whom she was shopping, that an unidentified individual told her that he "bet" Smithy stepped in particular hole.

But as the Court previously noted, that evidence is both inadmissible hearsay and speculative. *Smithy*, 2018 WL 3384305 at *3.

Smithy cites to *Drennan v. Kroger*, 672 So.2d 1168 (Miss. 1996), for the proposition that she need not identify the specific dangerous condition. In *Drennan*, the plaintiff slipped on a puddle of water that the plaintiff alleged was caused by a leaky roof. The plaintiff sued, and during trial, the trial court directed a verdict for the defendant, finding that the plaintiff had failed to provide any evidence of actual or constructive notice. *Id.* at 1169. The issue before the Mississippi Supreme Court, then, had nothing to do with whether the plaintiff had evidence of what caused her fall, but rather whether the plaintiff had evidence that the water was there because of the defendant's negligence. *Id.* at 1170. Thus, *Drennan* has no application to the case at hand.

Smithy goes on to argue that she is not just claiming that a hole caused her fall, but the hole combined with inadequate lighting caused her fall. Inadequate lighting can turn a normal condition into an unreasonably dangerous one. *Thomas v. Premier Prods., Inc.*, No. 1:10-CV-00334-SA-DAS, 2013 WL 65437, at *5 (N.D. Miss. Jan. 4, 2013). But even if inadequate lighting led to Smithy falling on something she would have otherwise seen, Smithy must still identify what it is she fell on. For example, in *Woten v. Am. Nat. Ins. Co.*, it was undisputed that the plaintiff tripped a curb in a parking garage. 424 F. App'x 368, 369 (5th Cir. 2011). The district court granted summary judgment because the curb itself was not an unreasonably dangerous condition. *Id.* The Fifth Circuit reversed because there was factual dispute as to the lighting conditions of the garage and the "lighting, *combined with the curb*" could constitute an unreasonably dangerous condition. *Id.* at 371 (emphasis added). But unlike the plaintiff in *Woten*, Smithy has admitted she does not know what she fell on. Thus, even if Smithy could establish that the lighting was inadequate she

cannot establish a causal connection between the lighting and her fall. Accordingly, she has no evidence that an unreasonably dangerous condition caused her fall.

## Conclusion

The Court finds that Smithy cannot establish a genuine issue of material fact as to what caused her fall. Accordingly, Kroger is entitled to judgment on her negligence claims, and its motion for summary judgment is granted.

A separate order shall issue.

This the 18th day of October, 2018.

SENIOR U.S. DISTRICT JUDGE